The 471 patent is directed to a voting machine that allows disabled people for the first time to vote privately and independently with a paper ballot, and that's very important. And by private I mean that they don't need a neighbor, they don't need an election worker to help them. They vote independently, they do all the voting themselves, and they can cast the ballot without any help. And this voting machine is a classic subject matter that is patentable under Section 101. So is the only difference between this case and a voter verified that the claim requires the ability to have the ballot deposited in the ballot box automatically as opposed to with the assistance of some other party? No, there's two or three different things we should discuss there. The first thing on voter verified, that was a patent on taking... Answer my question. I've asked you what's the difference between this patent and the one that was held invalid in voter verified. Is the only difference that this patent provides a mechanism for automatic deposit of the ballot in the ballot box? No, this patent has a transport mechanism that extends from the front of the machine where you insert the ballot, and it passes the ballot through the print steps and everything else, and they're all integrated together. So just to follow up, it's the transport mechanism limitation that distinguishes this claim from the voter verified claim that was invalidated? No, let me finish my question, or answer. The transport mechanism takes it all the way to the ballot box. That is a novel structure. So that's classic machine structure. But it doesn't say what the structure is. The patent doesn't tell us what the structure is. It's just the concept of having a transport mechanism to take the ballot and put it in the ballot box, right? It's a paper ballot, and so you know it's a piece of paper that needs to be transported. And it's like saying a screwdriver. Well, a screwdriver is a purely functional word. You're driving screws. Right, but a screwdriver is a term that's kind of understood as having a particular kind of definite set of structure to those of skill in the art. I don't know if there is even an art when it comes to, I don't know, voting booth mechanisms, and then understanding what would a transport mechanism actually look like to a skilled person in the voting booth art. The patent itself disclosed basic rollers and belts to move a ballot along. Are those limitations in the claim, the rollers and whatnot, that are described in the spec? They're required in order to transport the ballot. Yeah, but that's, if you could answer my question, do you think of those things as being actually necessarily part of the claim somehow? Because I don't see there was any kind of claim construction on the term transport mechanism. I think transport mechanism is a genus term that would include the various ways people move a paper ballot, since there's different ways to move a paper ballot. So it's transporting the ballot by any means. Is that the right way to think of the claim? By traditional means. Could it be a person? Sorry? Could it be a person, a transport mechanism? It would not be, no. Let me just give you an example. Another term that you rely on is the diverter. There's a diverter operable to direct the ballot, right? And so claim construction of diverter is an element separate from the transport mechanism that causes the ballot to deviate from the transport path to a different path, right? So it's, I wonder whether that's so broad. I wonder whether these things could include, cause its claim so broad, which is one of the concerns and one of the reasons maybe you've got a one-on-one problem here, is because it's so broad, it might lead on a person. Grabbing the ballot and taking it, because it doesn't, it's not defined at all. In order to seek to have it construed as a means plus function term. Well, I believe that when a person of skill in the art knows that you're going to move a paper ballot from a voter to the ballot box, by simply putting in an input, an input to either cast or return the ballot, you know that the machine itself is actually casting or returning the ballot. And that requires a structure which renders this a machine. In Voter Verified, the inventor freely argued that his voting machine there was just a generic computer with generic computer components. He argued that. And then separately, he argued there were other limitations, two of them, that required human cognitive action. And this court found that generic computer components fail the one-on-one test. Human cognitive actions fail the one-on-one test. And so by combining them together, you still fail one-on-one. In our claim, there is no human cognitive action. There's a structural element. It's not a computer claim. It's a structure claim. It's a voting machine under Section 101. Well, let's assume for the moment that it is a voting machine. The transport mechanism appears to be doing nothing more than what humans have done for a long time. That is to take the paper ballot and deposit it in a ballot box. And that's true if you're able-bodied. But this machine is directed to people who are not able-bodied. And so the question then is, is how do you keep it private? How do you go to a quadriplegic who can simply push air in and out, and you're going to let them vote, and you're going to let them fill out a ballot, and you're going to let them cast it, and you're not going to help them so no nosy neighbors can see how they voted? But hasn't the Supreme Court said, look, no matter how great the invention is, that's not the test. The test is whether it's abstract because it's just doing something that's been done, you know, for a long time. It's abstract. It's just an idea as opposed to, you know, a new way, for example, using different ballots in ways that were never used before to then move the vote into the ballot box. It hasn't been done for a long time. Their expert, Dr. Golden, said that this was a big deal when it finally happened. I'm sorry. That was Van der Heide. Their expert, Van der Heide, and I said, was this a big deal to the disabled community? He was an expert in the disabled community. He said, yes, this was a big deal. But the big deal is that it's automated instead of having some individual assist the handicapped person to do it. That's the invention, is automating what used to be done manually. This patent went through the IPR process. They did not assert a 102 argument. They asserted a 103 argument, and when the board dug into the facts, the board found that the patent was valid under 103. They asked for reconsideration at the PJAB level. Look, I've read your brief in Voter Verified where you yourself argued for the invalidation of the Voter Verified patent. I did. And you argued again and again in that brief that merely automating something that was done manually before did not make it 101 eligible. And I'm having trouble seeing why that same line of reasoning doesn't apply to this patent. Because the way people used to vote and the way they still vote, able-bodied people, you fill out your ballot, you look at it, you walk across the room and you cast it. What this did is it brought the ballot box across the room and claims the ballot box as an element, and then it integrates all of the functions so that it works together as a machine. Right, and this is where the rubber hits the road, where we're trying to figure out the specificity of what this transport mechanism is. This limitation that is, I guess, the nature of invention here is claimed so result-oriented and functionally that there's no there there. It's just the idea of mechanically shooting the ballot from one side of the room to the other. However it gets done, it gets done. That's the invention. And that's where I think the trouble lies, where, yes, there's the concern about mere automation. And the question is, is this more than mere automation? Because there's something specific and concrete in how the automation takes place. And I'm struggling when I'm looking at the actual words of claim 16 here. Where is that specificity? Well, in EcoServe, they automated cleaning jet engines. And people cleaned them before. In EcoServe, they cleaned them better. They automated the process. And this court found that that passed 101. 101 is a threshold inquiry. It's not 102, it's not 103, it's not 112. How is this covering a better way of transporting? The better way is if you're disabled, you have to have a neighbor slide your ballot into a sleeve. I understand what you're saying. But I thought that what you were saying is that this is a better way of automatically transporting the ballot. Well, it's a better way for the person to use the machine to vote. It's a more efficient way. They can vote and deposit the ballot in the box and walk away or be rolled away in a wheelchair. And they vote it efficiently. They mark the ballot with a sip and puff. They mark the ballot with Braille. They mark the ballot with ‑‑ The problem I'm having is I'm having a hard time seeing why, as my colleagues have pointed out, this claim isn't directed to the parts that you're relying on as being what the claim is directed to, the novel part of it, the advance, if you will, that that is just simply automating something that was previously done by person. And so that's my problem is I'm struggling with that and thinking purely automating is an abstract idea. It wasn't done before by disabled people ever. And as to other people, there was no evidence in the record anywhere that someone used a transport path, the same one you insert your ballot into, to be the same one that deposits the ballot into the ballot box. So you're saying that because it's novel, because no one did it before, that makes it non‑abstract? Well, the way the district court framed the abstraction, they said it's anything that allows you to give the voter a choice between returning or depositing their ballot. But we have a lot more elements in there. He picked on just the one element of the claim, didn't look at the claim as a whole in describing what his view of the abstract idea was. But separately under step two of Alice, there's an inventive concept here. Mayo said that 102 and inventive concepts may have some overlap. In this case, when they filed their FDR petition, they didn't even assert 102, they asserted 103. And so I submit that when you've lost an IPR, you've put up your best art, that there is at least a fact question for the jury as to whether there is an inventive concept or atrix. To just simply throw this out without a look, without looking at the facts, to me is difficult. The complaint, the judge didn't ever cite to the complaint, the judge just went straight to the patent, saw the voter verified claim and said they're too close, you lose. And the voter verified case, when you read it, the last two pages of the published decision, it says by this patent he's on admission, it's either a generic computer or it's a human cognitive action. Neither one is a 101 subject matter eligible, is subject matter eligible, and therefore combining them doesn't help you either. But in our case, we went through the entire discovery process. They waited until the very end to file this motion, and then the court just walked it back to the very beginning and did not consider the evidence from the beginning of the case. But why is this not automating a process that was done manually before? Why is it not in that box? It's doing it much more efficiently. You're putting the ballot box right next to the machine. The voter knows the ballot goes into the machine. The voter knows that even though they're handicapped, that it properly recorded their vote, they get to vote with a good, clear mark. There's not going to be a dispute about what they did or didn't vote about. You won't need a recount about hanging chads and those kinds of things. It's an improvement in the voting system. It's an improved voting machine that makes voting better. And especially with all the time you want to save it. I apologize. You're into your rebuttal time. I reserve. Thank you, Your Honor. Mr. Panikowsky. Good morning, Your Honors. Stanley Panikowsky for the appellee, Smartmatic USA Corporation. Your Honors, the district court correctly ruled that as a matter of law, the 471 patent fails both steps of the Alice test for patent eligibility under Section 101. For both the abstract idea and the inventive concept inquiries, the 471 patent claims cannot be meaningfully distinguished from those that this court held ineligible in its precedential voter verified decision. And even if voter verified had not already been decided, Your Honors, this court's other precedents independently dictate the same outcome here. As this court has held in cases like Rakatnakor and Chargepoint, the focus of the Section 101 inquiry needs to be on the language of the claims. And this is where ES&S's arguments fail. Do you think transport mechanism is a means plus function limitation? Your Honor, we don't have a view that we formulated on whether transport mechanism is a means plus function limitation for purposes of Section 112. However, for purposes of Section 101, it falls within the types of plain elements that this court has described in cases like CX Loyalty and TLI, where it is defined solely in functional terms. Counsel, there's not a different claim construction to be made by the district court judge for purposes of 101 versus purposes of 112, right? The question is what is the proper construction of this term, transport mechanism? Did anyone suggest that it was written in means plus function format? Your Honor, I'm not aware if elsewhere in the record anyone suggested or addressed the possibility of transport mechanism being a means plus function claim. We've got a lot of students in this room. Would you mind telling them why it might be important, why we're even talking about this? If you want, I will, but if you don't mind doing it, I'd appreciate it. Yes, Your Honor. And, Your Honor, focusing on the transport mechanism limitation, which was the first of two limitations. Hang on. What I'm trying to say is this. So means plus function, if one were to construe a transport mechanism as being means plus function limitation, that would mean that you incorporate all the structure from the specification into the claim. And so what the claim would then recite would be all these different rollers and shoots, and it would be much more structural than it's currently written. Is that correct? Yes, Your Honor. And here we don't have that claim construction from the district court. We do not have any argument from E, S, and S that transport mechanism should be construed to limit that claim in that manner in the context of Section 101. All we have, Your Honor, that was brought to bear on the Section 101 motion when it comes to claim construction was the stipulated construction of the verb, which is purely functional. And likewise, Your Honor, even without a particular claim construction, for Section 101 purposes, the transport mechanism limitation is purely functional. What if the claim had talked about the rollers and the shoots and maybe also talked about, say, there's a mechanical switch, and so when the voter wants the paper ballot, the turn to him or her, the switch flips, and then the rollers move forward so the ballot comes out to the voter. But if the voter just wants his or her ballot deposited, then the switch goes the other way and the rollers go in reverse, and then the ballot goes down a different shoot into the ballot box. And let's say that all of that detail is in the claim. There wouldn't be a one-on-one problem, right? Your Honor, there would be a one-on-one problem, even if all that detail were in the claim. And the reason, Your Honor, is because in the specification of this patent, for example, at Appendix 99, Columns 6, Lines 43 to 46, the patent says that the claim transport mechanism includes speed rollers that are, quote, conventional in design and construction. Having a rubber ballot in the agency... Right, but now we're in a different territory now. You know, your argument here is now making me worried about what is the state of our Section 101 case law when you've now, in a claim, defined the transport mechanism with a lot of nuts and bolts. And we're talking about a mechanical invention at this point. We're not talking about one of these computer software claims where we're trying to figure out whether the software invention is merely approximating some mental process and automating that mental process. We're talking about something physical here with mechanical components to it. And now I've recited those mechanical components in the claim. And it almost sounds like there's no possible way to escape one-on-one abstract idea, in your view, unless some of those components are novel. And I think, in my view, the hypothetical claim I just came up with, there is enough technical specificity that's going on in the claim towards the so-called claim defense of the transport mechanism that it takes it outside of one-on-one. It takes it outside of being just an abstract idea of a transport mechanism. So could you maybe clarify your answer? Yes, Your Honor. So first, of course, Your Honor, that potential threat to Section 101 jurisprudence, if you posit it, is not posed in this case, given the poverty of technical detail in the claims. However, Your Honor, engaging your hypothetical, it is certainly possible to recite enough technical detail in the claims that you have escaped the Section 101 problem. This Court's decision in McGrow is an example of that, where specific rules were cited for automating a process that had previously been performed manually. But the automated process and the rules were completely different from the human subjects here.  But do you still think my hypothetical would be an abstract idea? Because all the components that make up the transport mechanism would be conventional components, yet the transport mechanism itself in the context of a claim of some kind of voting machine would be novel? I mean, Your Honor, in this particular case, the hypothetical claim still would be patently ineligible under Section 101, because what we have here, Your Honor, that we will not necessarily have in every case, is that we have expressed statements in the specification that say these are conventional components, or that the same substantive description is given of the transport mechanism at Appendix Page 105, column 1842 to 45, where it uses the same words and says, as is known in the art. So here, Your Honor, even if all of these particular technical details were recited in the claims themselves, when you go through the proper analysis under Alice Step 1, you'll see first that the claims are still directed to an abstract idea. Under Affinity Labs, the focus of the claims is going to be, as the district court said, giving voters a choice of returning or depositing their ballot. And you see that not just in one claim limitation, as Appellant's counsel said, Your Honor, but it actually permeates multiple claim limitations. And then when you get to the Embedded Concept Inquiry, Your Honor, the Embedded Concept Inquiry under Alice and in the source precedent is not focused on the volume of technical detail. It is focused on, are these claims adding something that is significantly more than the abstract idea itself? And if the alleged embedded concept, no matter how rich in technical detail it may be, consists only of things that the specification itself says are conventional or well known in the art, then, Your Honor, the hypothetical claim is still patent ineligible under Section 101. Your Honor, I may address several other points that Appellant's counsel raised. First, Appellant's counsel has pointed to the IPR decision. Of course, the IPR decision only concerns Section 103, not Section 101. Even if it had addressed Section 101 issues, as this Court held in the Tinnis case, that would not be binding on the District Court. And also this Court has repeatedly held in cases like Chamberlain that the Section 101 inquiry is different from non-obviousness and novelty. And moreover, Your Honor, there's a major forfeiture problem here with any reliance on the IPR decision. At Appendix Pages 313 to 343, that is ES&S's opposition to Smartmatic's motion for judgment on the paintings, there's no argument made based on the IPR decision. In fact, we see at Appendix Pages 340 to 341 that ES&S did not even submit the IPR decision as an exhibit to that opposition. It only submitted it as an exhibit in support of its summary judgment motion and Daubert motion, as we see in the docket at Appendix Pages 36 and 39. And therefore, under this Court's decision in Cristinius v. Baxter, any reliance that ES&S may wish to place on the IPR decision, those arguments have no merit anyway, but they're also forfeited, Your Honors. Also, ES&S's counsel today and in the briefing has discussed some deposition testimonials. Smartmatic's expert saying that something was, and I think that appellants have to use the word, this is a big deal. And that's at Appendix Page 1145. First, Your Honor, that's material outside the pleading that the district court properly declined to consider under this Court's decision in Ego Pharmacy under the rules given the district court discretion to reject extra pleading materials, as well as the third service decision in Kauai v. Dawson. But also, if you look at what the testimony actually was at Appendix Page 1145, Your Honors, and this is quoted in Pages 55 and 56 of the red brief, Smartmatic's expert was actually being asked about the goals of Los Angeles County's VSAP project. And then was asked a specific question, and I quote, and for the 1% who were blind and who want to hear back from the headphones, it's a big deal that they get to use the same equipment as everybody else, right? Smartmatic's expert answered, absolutely. The question was, and that's a big deal with respect to the disability community, right? Smartmatic's expert answered, that's right. So that testimony, even if it needed to be considered here, has nothing to do with the assertive pattern, has nothing to do with the claims. And so ES&S's reliance on that testimony is improper. Finally, Your Honors, this case is controlled by the rule that mere automation of a previously manual process is not enough to rescue a claim from abstractness. And we see at Appendix Page 97, Column 2, Lines 3 to 7, what that abstract idea is. As a district court put it, giving voters a choice of returning or depositing their ballot. And Your Honors, what we have here is even less than automation of a previously manual process. Columns 1 and 2 of the specification at Appendix Page 97 talk about how the voting process had already been automated in large part, and that those automatic voting machines were already in the prior card. And the only assertive advance here, as the specification makes clear, is simply further automating one step of that process. And as the claims show, doing so with only generic components, operating conventionally in their usual and expected way, which is not enough to confer patent eligibility under ALICE and this court's jurisprudence. Therefore, Your Honors, Smart Ida Pass and the district court's judgment be affirmed. Okay. Thank you, Mr. Panikowski. Thank you. Mr. Evans. We have a little over one minute here. Thank you, Your Honor. The automation that happened here is not unlike the automation in EcoServe, where you take things that have been done and you automate them to make them more efficient. The arguments we just heard, they sounded at 112, they sounded at 102, they sounded at 103. But as for 101, this is a machine. It requires a transport mechanism, and it requires certain mechanical components to be structurally integrated into a single unit. Those are mechanical requirements. And when you talk about what is abstract or not, that's a machine, that's mechanical. It passes the threshold inquiry. Now, whether the claim language meets 112 or it's sufficient or not, that's something that experts, that the jury can hear about. Would somebody know what a transport mechanism is? I submit that when you have a paper ballot and you talk about transporting it along a paper path, as this claim expressly talks about, the persons of skill and the art will know that you're going to be using rollers and bands to move it along the path. That's not the point of novelty. The point of novelty is taking that mechanical path from the beginning where you stick in the ballot, running it all the way through the machine to print it and then review it, and then send it back out if they want to throw it back out, or to cast it immediately into the ballot box. That mechanical structure never existed before. The IPR board said so. And the fact that the word transport mechanism could encompass various twists and turns, it's not unclear that you're talking about moving a piece of paper along a path. The challenge was how do you do that so that the person who has limited abilities can still function on the same machine as everyone else. And their own expert said, to the disabled community, getting to vote on the same equipment that everybody else uses, while it's private, while it's independent, that's a really big deal to them. And I submit that's what patents are all about. I have nothing further unless you have some questions. Okay, thank you, Mr. Evans. Thank both counsel. The case is submitted. That concludes our session this morning.